**STATE**

v.

**Randy J. ANDERSON.**

No. 99–106–C.A.

Supreme Court of Rhode Island.

June 8, 2000.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

George J. West, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

# O P I N I O N

BOURCIER, Justice.

The defendant appeals to this Court following his conviction by a Superior Court trial jury on one count of first-degree child molestation. He asserts on appeal prosecutorial misconduct relating to the complaining victim's trial testimony, and that the trial justice committed error, both in denying his motion for a new trial and in the course of instructing the trial jury. For the reasons set forth below, we reject his appeal and affirm his conviction.

I

Case Facts and Travel

The defendant, Randy J. Anderson (Anderson), married the mother of the complaining victim in August 1994. The victim, Laura,[1] was then thirteen years of age. In early 1995, Anderson began making inappropriate and lewd comments directed at Laura and engaged in suggestive sexually oriented conduct toward her that made her feel extremely uncomfortable in his presence. Anderson's behavior toward Laura soon became a subject of serious concern for her family, culminating in a family meeting in which it was decided that Anderson should not be allowed to be alone with Laura.

Nevertheless, Anderson did find opportunities to be alone with Laura, despite the familial concerns and cautions. On March 9, 1995, Laura, accompanied by her boyfriend, went to her mother's apartment after having been told by Anderson, who was at the apartment, that her mother also would be present. However, when she arrived at the apartment with her boyfriend, she found only Anderson present and was informed by him that her mother was still at work. At some point later in the afternoon, Anderson convinced Laura's boyfriend to leave, claiming that his presence would upset Laura's mother when she arrived home. After the boyfriend left, Anderson forced Laura to sit on the couch next to him and proceeded to rub her thigh while telling her how beautiful he thought she was. Without warning, Anderson grabbed Laura's hand and forced it down his pants and in contact with his genitals. She attempted to resist, whereupon Anderson held her down and proceeded to force her to perform fellatio upon him, telling her that "I love you a lot, and your mother doesn't do this for me."

---

1. Not her real name.

This fellatio-assault incident was followed by another molestation incident three days later, on March 12th, when Laura claimed that Anderson forcibly kissed her and digitally penetrated her during the course of a car ride after a family party.

In early April 1995, Laura told her father that she had been molested by Anderson, and she subsequently relayed those allegations to a social worker from the Department of Children, Youth and Families. Upon the resulting police investigation, Anderson was charged with two counts of first-degree child molestation. Following a Superior Court jury trial in October 1998, Anderson was convicted on count 1 of an indictment charging the March 9, 1995 fellatio-assault incident and acquitted on count 2 for the March 12, 1995 incident. Anderson moved for a new trial on his count 1 conviction, which was denied on October 30, 1998, and thereafter he was sentenced to fifty years, thirty years to be served, with the remaining twenty years being suspended. He was also adjudicated to be an habitual offender, pursuant to G.L.1956 § 12–19–21 and sentenced as such to serve an additional term of ten years.

Anderson has timely appealed to this Court. On appeal, he asserts (1) that the state's prosecutor engaged in prosecutorial misconduct in that he failed to correct certain allegedly false testimony given by Laura, in violation of his Fourteenth Amendment due process rights, (2) that the trial justice was clearly wrong in denying his motion for a new trial because the trial evidence was insufficient to support guilt beyond a reasonable doubt, and (3) that the trial justice erred in instructing the jury as to the state's required burden of proof because the charge given reasonably could have been interpreted to require less than the constitutionally mandated proof beyond a reasonable doubt.

## II
### Prosecutorial Misconduct

Anderson first asserts that certain allegedly false testimony given by Laura went uncorrected by the state's prosecutor, even though the prosecutor was aware of its falsity, thereby allowing Laura to commit perjury, and that the prosecutor compounded his misconduct by referring to this suspect testimony in his closing argument. He claims that at trial, Laura denied having conversations relating to a tattoo on Anderson's penis, while in previous sworn testimony at Anderson's violation hearing, she testified that she was aware of the tattoo on his penis through conversations prior to the fellatio-assault, both with Anderson and her mother. We conclude that his contention is without merit.

██ "According to our well-settled 'raise or waive' rule, issues that present themselves at trial and that are not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Morris*, 744 A.2d 850, 858–59 (R.I.2000) (quoting *State v. Bettencourt*, 723 A.2d 1101, 1107 (R.I.1999)). "Consequently, allegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level." *Id.* at 859 (quoting *Bettencourt*, 723 A.2d at 1107–08).

We note from the record before us that defense counsel, despite having had all the pertinent transcripts from the violation hearing available to him during Anderson's trial, simply did not challenge, in any meaningful manner, the controverted testimony at any point in the proceedings, nor did he avail himself of the opportunity to cross-examine Laura concerning her testimony given at Anderson's previous violation hearing relating to her knowledge of the tattoo.

██ Because Anderson failed to properly object during trial or otherwise challenge Laura's trial testimony regarding her knowledge of the tattoo on Anderson's

penis, his assignment of error concerning this issue has not been preserved for appellate review. Even assuming, however, that the issue of Laura's testimony had been properly preserved for our review, we are of the opinion that his argument lacks substantive merit.

The record reveals that at the violation hearing, Laura testified:

"Q: * * * [W]ere you aware that the defendant had a tattoo on his penis?

"A: Um. Yes. I was up at the prison visiting Randy, and he mentioned he had a tattoo on his penis, but he never described it, and my mother just sat up and said, 'I don't think we need to discuss this right now.' "

At trial, on direct examination, Laura testified:

"Q: Had there ever been any conversation between you, the defendant, and your mother during the meeting about a tattoo on the defendant's penis?

"THE COURT: Yes, or no.

"A: Yes.

* * *

"Q: And who, during that conversation of the three of you, brought up the topic of the tattoo on his penis?

"A: We had just only—the way it was brought up he came out and said, 'I have a tattoo on my—' my mother stopped him and said, 'We don't need to talk about this right now.' "

■ It is axiomatic that while there may exist inconsistencies in testimony given by a witness during trial, the mere presence of those inconsistencies does not, standing alone, constitute perjury *per se*. See *Dowell v. Moran*, 702 A.2d 1173, 1173–74 (R.I.1997). Based on our review of the trial record, we believe that Laura's testimony cannot, by any stretch of the imagination, be considered perjurious. Indeed, we are reluctant even to describe her testimony as inconsistent in any significant manner. Simply put, nowhere in the record is there any indication that Laura denied having knowledge of the existence

and whereabouts of Anderson's tattoo, as claimed by Anderson. We reiterate that any supposed inconsistency alleged by Anderson as to Laura's knowledge of the location or specific design of the tattoo in question or conversations concerning that tattoo between Laura's violation hearing testimony and her trial testimony was an appropriate subject for defense cross-examination, a trial strategy that Anderson's counsel chose to forgo. Anderson's claim of prosecutorial misconduct is meritless.

### III

### Motion for New Trial

■ Anderson next asserts that the trial justice erred in denying his motion for a new trial because there was a lack of medical or physical evidence relating to the crime charged as well as significant inconsistencies in Laura's trial testimony. We likewise reject this contention.

"When passing on a motion for a new trial, a trial justice is required to review and evaluate all of the trial evidence and must assess the credibility of each of the trial witnesses. After doing so, the trial justice, in the light of the jury instructions given the jury must then exercise his or her independent judgment upon the evidence and determine if the jury's verdict is a proper response to the trial evidence in light of the charge given. If the trial justice concludes that the verdict is a proper response to the evidence and the charge, or that it is one upon which reasonable minds might differ, the motion must be denied." *Bettencourt*, 723 A.2d at 1113.

■ We note from the record that the trial justice carefully weighed and considered all of the trial evidence and adequately assessed the credibility of each of the trial witnesses. In assessing the credibility of those witnesses, he properly focused on Laura, the state's primary witness and noted "[s]he was * * * subjected to severe cross examination, and some discrepancies

in her testimony were exposed. Nonetheless, the jury quite obviously accepted her testimony as to that charge. From my vantage point I think the jury was well justified in crediting her testimony * * *." He further found that her testimony had been corroborated and supported by the state's other witnesses. On the other hand, he found that Anderson's trial witnesses "did nothing, in my view, to dispel [Laura's] credibility as to the March 9th events." He also found Laura's testimony corroborated by the fact that she was able to describe the tattoo on Anderson's penis. He concluded his thorough evaluation of the trial evidence by noting that he agreed with the trial jury's verdict and stated "I have no basis, nor any reason to set aside the jury's verdict as to the charge the defendant was convicted of." Because it is clear from the record that the trial justice exercised his independent judgment in appraising the weight of the evidence, assessing the credibility of the trial witnesses and determining that the verdict rendered was a proper response to the trial evidence and the charge given, we are of the opinion that he did not err in denying Anderson's motion for a new trial.

## IV

### The Jury Instruction

Anderson finally asserts that the trial justice erred in instructing the jury as to the definition of guilt beyond reasonable doubt, both in his original charge to the jury and in responding to a jury request for a further instruction made during deliberations to clarify the original instruction as it related to reasonable doubt. He argues that the trial justice's definition of reasonable doubt could have been interpreted by a reasonable jury to require a level of proof lower than what is constitutionally required for criminal conviction, pursuant to *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368, 375 (1970). Specifically, he points to the following excerpt from the jury charge:

"Always bear in mind that a defendant does not have to prove or disprove anything. It is the State which has the burden of proving beyond a reasonable doubt each and every element of any offense under consideration.

"Now the term 'beyond a reasonable doubt' does not easily lend itself to definition. Let me begin by telling you what a reasonable doubt does not encompass. Quite obviously, to prove something beyond a reasonable doubt does not require the State to prove it beyond a shadow of a doubt; nor is the State required to prove guilt beyond all possible doubt. Reasonable doubt is not a whimsical or fanciful doubt; nor is it doubt which is prompted by sympathy. On the other hand, you may not convict a defendant merely because of suspicion or conjecture. The State must present evidence which, upon examination, is found to be so convincing and compelling as to leave in your minds no reasonable doubt about the defendant's guilt.

"We know from experience what a doubt is, just as we know when something is reasonable or unreasonable. Reasonable doubt, by definition, is a doubt founded upon reason and not conjecture or speculation. A reasonable doubt is a doubt based upon evidence or lack of evidence. Proof beyond a reasonable doubt exists when, after you have thoroughly considered and examined the evidence before you, you have a firm belief that the defendant is guilty as charged."

Focusing on the last sentence of the above excerpted instruction, Anderson asserts that the jury could have reasonably believed that reasonable doubt was satisfied where the jury merely had a "firm belief" of his guilt. More generally, he argues that these instructions, *in toto*, favored the state by unduly emphasizing what the state was not obligated to prove and defining what reasonable doubt did not encompass, as opposed to adequately defining the state's burden and obligation

to demonstrate proof beyond a reasonable doubt.

■ We have consistently held that to withstand appellate review, a jury charge must cover the law adequately. *State v. Grabowski,* 672 A.2d 879, 882 (R.I.1996). "[T]his court examines jury instructions in their entirety to determine the manner in which a jury of ordinary, intelligent lay persons would have comprehended them." *Id.* (quoting *State v. Leuthavone,* 640 A.2d 515, 521 (R.I.1994)). "To ascertain whether an instruction has fairly set forth for the jury the legal principles controlling a crucial factual issue, we must read the allegedly inadequate instructions in the context as a whole." *Id.* (quoting *State v. Baker,* 417 A.2d 906, 910 (R.I.1980)).

■ Here, we note that the trial justice explained both the presumption of innocence and the burden of proof in his original instruction and explained the burden of proof again in his re-instruction to the jury. The record before us indicates that when considered in its entirety, the jury charge more than adequately set forth the state's beyond a reasonable doubt burden of proof and the presumption of the defendant's innocence and cannot be considered to be pro-prosecution in its wording or tone. Additionally, in light of the charge as a whole, the trial justice's use of the term "firm belief" did not affect the propriety of the instructions and in no way would have misled or confused the jury. Therefore, we reject Anderson's argument on this point.

■ We again note that pursuant to our well-settled "raise or waive" standard, an issue not preserved by a specific objection at trial cannot be articulated at the appellate level. *Morris,* 744 A.2d at 858–59. Nowhere in the record before us do we find an objection to the charge given to the jury. As such, any contention relating to that charge is deemed to have been waived. Notwithstanding that procedurally defective flaw in Anderson's appellate assertion, we have nonetheless considered

his jury instruction challenge and are of the opinion that the trial justice did not err in instructing the jury on the state's burden of proof.

For the foregoing reasons the defendant's appeal is denied and the judgment of conviction is affirmed. The papers in this case may be remanded to the Superior Court.